UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA          CASE NO. 20-cr-139-01-01

VERSUS                            JUDGE FOOTE

CHRISTOPHER A BERNARD (01)        MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Christopher Bernard is charged with one count of felon in possession of a firearm and one count of possession of a firearm in furtherance of drug trafficking. The charges arise out of a traffic stop. Before the court is Defendant's Motion to Suppress (Doc. 21). For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress, and the following facts were established.[1] On May 6, 2020, Corporal William Moak and Officer Chandler Cisco, members of the Shreveport-Caddo Narcotics Task Force, were patrolling the Cedar Grove neighborhood in Shreveport. Cedar Grove is known as a high-crime and high drug-trafficking area. The officers were driving east on East 76th Street, which is a very narrow street. They saw a silver Mercedes turn from Thornhill Avenue to travel west on East 76th. Moak stopped his vehicle behind a parked car to allow the silver Mercedes to pass him.

---

[1] There is no video recording of the traffic stop from either the dashcam or the officers' bodycams. Corporal Moak testified that, at the time, he was not aware that he was supposed to fill out paperwork to have the department keep the video longer than 60 days. Tr. 7.

The windows of the officers' car were down, and Moak saw that the windows and sunroof of the Mercedes were open. Tr. 7-11.

As the Mercedes passed close by the officers on the narrow road, the officers could smell the "overwhelming odor" of marijuana. Corporal Moak drove around the block and saw the Mercedes traveling north on Fairfield Avenue. Once he caught up to the Mercedes, Moak again smelled marijuana coming from the vehicle. The Mercedes took a right turn onto East 70th Street, and Moak activated his lights to pull the car over. The Mercedes pulled into a parking lot. The whole time he was following the vehicle, Moak could smell the "very distinct odor" or marijuana. Tr. 11-13.

Moak and Cisco exited their vehicle and approached the Mercedes. The windows of the Mercedes were still open, and the officers could still smell the overwhelming odor of marijuana.[2] Moak introduced himself to the driver, later identified as Defendant, and advised him that he had been pulled over due to the smell of marijuana. Defendant stated, "I've been smoking." Tr. 14-15.

Moak asked Defendant to step out of the vehicle. When Defendant complied, Moak saw a gun between the driver's seat and the console. Moak asked Defendant if he could search the vehicle, and Defendant said, "Yes." Moak patted down Defendant to make sure that he did not have a weapon on his person. Moak then read Defendant his Miranda rights and handed Defendant off to Officer Cisco, who placed Defendant in handcuffs and stood

---

[2] At the hearing, Moak testified that he could not remember whether he smelled burnt marijuana or fresh marijuana because he did not document that detail in his report. He stated, "I don't - - I don't recall on that exact day if it was burnt or green. It was just an overwhelming odor." Tr. 27.

with him at the back of the Mercedes. Tr. 16-17, 48. Moak then retrieved the gun from the vehicle, released the magazine, and pulled back the slide to check for a chambered round. The gun was loaded with 19 cartridges with one in the chamber. As Moak was clearing the weapon, Defendant asked what he was doing. Moak responded that he was doing a safety check of the gun, and Defendant said that he withdrew consent to search the vehicle further. Tr. 18-19.

Corporal Moak continued to search the car. In the center console, he found a bag containing approximately 3.1 grams of marijuana and packaging material. In the back seat, he found a backpack that contained a digital scale and three bags of marijuana. One bag contained 64 grams of marijuana, another contained 7.7 grams, and the third contained 1.3 grams. Tr. 19-20.

Moak then tried to question Defendant. Defendant at first stood quietly and did not answer any questions. After a short period of time, Defendant looked toward the gun and marijuana and said that he was going to be in jail for a long time. Defendant told Moak he had served a 13-year sentence for possessing marijuana and had just been released in 2019. He asked Moak if he could help him out with the marijuana and the gun. Moak said no and did not offer to help him in any way.

Moak asked Defendant where he got the gun, and Defendant said he got it from a "youngsta" on the "streets." The officers later determined that the gun was stolen. Tr. 21-22.

**Analysis**

    **A. Introduction**

Defendant argues that the evidence seized from his vehicle and the incriminating statements he made should be suppressed because (1) the traffic stop was not justified at its inception, (2) the search of the car was unlawful, and (3) the Government cannot show that Defendant's statements were voluntary or that he made a valid Miranda waiver.

    **B. The Initial Traffic Stop**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417 (1981). Reasonable suspicion

exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. Arvizu, 534 U.S. at 274. However, it is clear that the officer's mere hunch will not suffice. Terry, 392 U.S. at 27. It is also clear that reasonable suspicion need not rise to the level of probable cause. Arvizu, 534 U.S. at 274.

Defendant argues in his motion to suppress that the traffic stop was not justified at its inception because the officers' testimony was not reliable. Corporal Moak testified that he first saw Defendant driving his vehicle on a narrow street. Moak, who was riding with his windows down, described the odor of marijuana as "overwhelming" when Defendant's vehicle passed him. Moak circled the block and caught back up to Defendant, and he again detecting the odor of marijuana. Based on these circumstances, the traffic stop was justified. The "overwhelming" and "very distinct" smell of marijuana emanating from the vehicle gave the officers reasonable suspicion that the driver was engaged in narcotics activity. U.S. v. Casteneda, 951 F.2d 44, 47 (5th Cir. 1992).

Defendant argues that the officers' testimony regarding the smell of marijuana was not credible. Defendant points out that Corporal Moak could not remember whether it smelled like burnt or fresh marijuana. Officer Cisco testified that he smelled fresh marijuana, but the Defendant contends that the less than three ounces of packaged and stored marijuana in the car could not generate such an overwhelming odor. Defendant notes that the search of the car did not turn up any evidence of recent usage, such as

smoking paraphernalia, rolling papers, or ashes, to indicate that Defendant had been smoking in the car.

The court finds that the testimony of the officers was credible. Corporal Moak admitted that he could not remember whether the smell was burnt or fresh marijuana because he did not write that detail in his report. However, he and Officer Cisco were both adamant and consistent in their testimony that they smelled a strong odor of marijuana coming from the vehicle on more than one occasion.

### C. The Search of the Vehicle

The Fourth Amendment protects people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. If a vehicle is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. Pennsylvania v. Labron, 116 S.Ct. 2485, 2487 (1996) (per curiam). The Fifth Circuit has consistently held that the smell of marijuana provides an officer with probable cause to conduct a warrantless search of a vehicle. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005) (detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989) (Border patrol agent's detection of odor of marijuana alone would have justified search of vehicle).

Corporal Moak testified that he smelled the odor of marijuana coming from the vehicle when he passed it on a narrow street. After the traffic stop was initiated and Moak approached the vehicle, he detected the "overwhelming" odor of marijuana coming from

the vehicle. The officers had probable cause to search the vehicle for contraband despite Defendant withdrawing his consent to search the vehicle.

### D. Defendant's Statements

Defendant also argues that his statements to the officers were not made freely and voluntarily. A statement or confession is voluntary if it is the product of the defendant's free and rational choice; it is voluntary in the absence of official overreaching either by direct coercion or subtle psychological persuasion. U.S. v. Bell, 367 F.3d 452, 460–461 (5th Cir. 2004); U.S. v. Mullen, 178 F.3d 334, 341 (5th Cir. 1999). The statement must be voluntarily, knowingly, and intelligently made, and the individual confessing must be cognizant of the rights being abandoned and the consequences of doing so. U.S. v. Santiago, 410 F.3d 193, 202 (5th Cir. 2005). When a defendant challenges the voluntariness of his confession, the government must prove its voluntariness by a preponderance of the evidence for the confession to be admissible as substantive evidence at trial. U.S. v. Clay, 408 F.3d 214, 221 (5th Cir. 2005).

After pulling Defendant's vehicle over, Corporal Moak approached the vehicle and introduced himself. Moak told Defendant he had pulled him over for the overwhelming odor of marijuana. Defendant responded, on his own and without any questioning from Moak, "I've been smoking." This statement was not made in response to any interrogation, and Defendant was not under arrest or in custody for purposes of Miranda. The statement was voluntary.

After Defendant exited the vehicle and Officer Moak saw the handgun, Officer Cisco placed Defendant in handcuffs, and Moak read Defendant his Miranda rights. Moak

continued to search the vehicle. Moak began to question Defendant, who stood silently and did not answer any questions. Defendant did not ask for an attorney or say that he would not answer any questions.

Corporal Moak finished searching the vehicle and placed the contraband on top of the vehicle. Moak was standing by the vehicle filling out a booking slip. Without any prompting from any of the officers, Defendant admitted that this was going to cause him to be in jail for a long time and asked if Moak could "help him out." Moak did not promise him anything in relation to the evidence, but he did ask Defendant questions. Defendant answered Moak's questions concerning where he purchased the firearm.

Where the prosecution shows that a valid Miranda warning was given and understood by the accused, the accused's uncoerced statement establishes an implied waiver of the right to remain silent. Berghuis v. Thompkins. 500 U.S. 370, 386 (2010). Defendant was read his Miranda rights and indicated that he understood them. Without any prompting or coercion from the officers, Defendant voluntarily chose to engage in a dialogue and answer Moak's questions. Thus, Defendant made a knowing and voluntary waiver of his Miranda rights.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 21) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court,

unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of June, 2021.

Mark L. Hornsby
U.S. Magistrate Judge